UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE "JOEY" CARRIZALES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VALLEJO, a municipal corporation; VISHVDEEP GIRI, individually and in his official capacity as an officer for the Vallejo Police Department; and DOES 1-25, inclusive, individually, jointly, and severally,<br><br>Defendants. | No. 2:25-cv-1243 AC<br><br>ORDER |

This case is before the undersigned for all purposes pursuant to the parties' consent. ECF No. 13. Defendants have filed a motion to dismiss this case. ECF No. 9. Plaintiff opposed the motion. ECF No. 15. Defendants replied. ECF No. 16. For the reasons set forth below the undersigned recommends defendants' motion to dismiss be GRANTED in pard and DENIED in part.

## I. Background

### A. The Complaint

Plaintiff Joey Carrizales is an advocate for the unhoused community. ECF No. 1 at 1. On July 31, 2023, 63 year-old Carrizales was protesting the eviction and displacement of unhouse

1

campers being conducted by the Vallejo Police Department. Id. at 3. Plaintiff stood in front of a tow truck as part of his protest. Id. at 4. Defendant Officer Vishvdeep Giri asked plaintiff to move. Id. When plaintiff declined to move, Officer Giri told him to put his hands behind his back and informed him that he was being arrested for delaying and obstructing an officer. Id. Plaintiff complied and placed his hands behind his back. Id. Other officers were also at the scene.

Officer Giri walked plaintiff to the rear passenger door of his Vallejo PD patrol SUV. Id. Plaintiff notified Officer Giri that he wanted to exercise his 5th Amendment right to remain silent and he wanted to speak to an attorney. Id. Plaintiff also notified Giri that he recently had open heart surgery and that the tight handcuffs were causing his chest pain and putting tension on a fresh surgical scar. Id. Giri opened the door and "attempted to forcefully push" plaintiff into the back seat, while plaintiff verbally protested this rough treatment. Id. Officer Giri ignored plaintiff, slammed the door, and walked away. Id.

Once inside the SUV, plaintiff noticed the air conditioner was not on and the window was only slightly cracked open, on a warm July afternoon. Id. Plaintiff began to sweat in the hot car and his discomfort was exacerbated by his overtightened handcuffs and strained surgical wound. Id. Plaintiff's mouth was dry, and he became concerned for his health; he called out to officers for assistance and water, but nobody responded. Id. As his pain increased, plaintiff called for assistance and requested water on three separate occasions. Id. Two unidentified officers responded to the car but refused to provide water or assistance. Plaintiff spent at least 20 minutes in the back of the SUV. Id.

When Officer Giri returned to the patrol vehicle, he got into the driver's seat and began to drive plaintiff without securing him in a seatbelt. Id. at 5. Plaintiff again informed Officer Giri that he was not feeling well and needed medical attention, but rather than driving to the hospital located two blocks away, Officer Giri proceeded to drive away from the hospital and toward downtown Vallejo. Id. During the drive, plaintiff again informed Officer Giri that he needed medical attention, and Giri told plaintiff "no." Id. Officer Giri told plaintiff he was headed to the Vallejo Police Department so they could wait for anther detainee who would ride with them to the

Solano County Jail in Fairfield. Id.

When they arrived at the police department, plaintiff made an explicit demand for medical attention, but instead of calling an ambulance or transporting plaintiff to the emergency room, Officer Giri told plaintiff the jail nurse would decide if he needed medical attention whenever they got to the jail. Id. Plaintiff waited in the hot car, without water or medical attention, with Officer Giri removing him from the patrol car twice to search him. Id. During the second search, Officer Giri "violently dug is fingers into the center" of plaintiff's chest, directly on his open-heart surgery would, causing intense pain and protest from plaintiff, but Officer Giri did nothing. Id. at 6.

When the second detainee finally arrived, Officer Giri transported her and plaintiff to the Solano County Jail, driving at a very high speed. Id. When they arrived at the jail, plaintiff again reported his symptoms, and the Solano County Jail nurse took one look at plaintiff and directed Officer Giri to take plaintiff to the emergency room immediately. Id. Officer Giri told the nurse that they would be back in 90 minutes. Id. Officer Giri again failed to secure plaintiff in a seatbelt, and drove erratically and angrily, while plaintiff yelled for the officer to slow down. Id.

Plaintiff arrived at the hospital around 4:30 p.m. and was admitted. Id. Officer Giri told plaintiff to lie down in a loud, angry voice, so that plaintiff could be handcuffed to the bed. Id. Officer Giri again applied the handcuffs tightly and plaintiff complained of pain, but Officer Giri ignored him. Id. Plaintiff was notified by the doctor that he suffered a heart attack and was required to stay in the hospital for three days for observation. Id. No charges were ever filed against plaintiff. Id. at 7.

Plaintiff sues Officer Giri, unnamed Doe officers, and the City of Vallejo for (1) violations of his Fourth Amendment right against unlawful seizure, (2) his Fourth Amendment right against excessive force, (3) his Fourth Amendment right against denial of medical care, (4) his First Amendment Right to question police action, (5) violation of California's Bane Act, (6) common law negligence, (7) assault, (8) battery, (9) false imprisonment, and (10) intentional infliction of emotional distress.

////

B. Motion to Dismiss

Defendants move to dismiss each cause of action on various grounds. ECF No. 9. Each of defendants' arguments is addressed in detail below.

## II. Analysis

A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See

Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

### B. Request for Judicial Notice

Defendants ask the court to take judicial notice of audio and video cameras worn by Officer Giri and two other officers. ECF No. 9-1. "Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss," Van Buskirk v. Cable News Network, 284 F.3d 977, 980 (9th Cir. 2002), and cannot "consider[ ] evidence outside the pleadings," United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). Exceptions exist for "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," which a court may properly consider "without converting the motion to dismiss into a motion for summary judgment." Id. (citations omitted).

There is no binding Ninth Circuit authority on the question whether body camera video, specifically, is appropriate for judicial notice. Defendants cite McCormick v. County of San Diego, noting that it collects cases in which courts took judicial notice of body camera footage at the motion to dismiss stage. See McCormick, No. 20CV1753 JM (AGS), 2021 WL 913906, at *2–3, 2021 U.S. Dist. LEXIS 45048 (S.D. Cal. Mar. 10, 2021). Notably, the plaintiff in McCormick did not object to judicial notice of the body camera videos. Id. at *3. Many other courts in the circuit, under various circumstances, have found body camera footage not subject to judicial notice, particularly where defendants attempt to use it to undermine a claim of excessive force. See, e.g., Evans v. City of San Diego, No. 23-CV-0883-BAS-WVG, 2024 WL 3907046, at *3, 2024 U.S. Dist. LEXIS 151939 (S.D. Cal. Aug. 22, 2024); Knickerbocker v. U.S. Dep't of Interior, No. 16-CV-01811-DAD-JLT, 2018 WL 836307, at *6, 2018 U.S. Dist. LEXIS 23603 (E.D. Cal. Feb. 13, 2018); Rodriguez v. County of Santa Cruz, No. 22-CV-07836-JST, 2023 WL 4687197, at *3, 2023 U.S. Dist. LEXIS 125566 (N.D. Cal. July 20, 2023).

Here, even if the body camera footage is considered a public record potentially appropriate for judicial notice, the court finds such notice inappropriate because the substance of the video is subject to varying interpretations. See Muhaymin v. City of Phoenix, No. CV-17-04565-PHX-SMB, 2019 WL 699170, at *3, 2019 U.S. Dist. LEXIS 26819 (D. Ariz. Feb. 20,

2019) (considering video from officers' body-cameras as a matter of public record to the extent it is not disputed); see also Lihosit v. Flam, No. CV-15-01224-PHX-NVW, 2016 WL 2865870 at *4, 2016 U.S. Dist. LEXIS 64790 (D. Ariz. May 17, 2016) (considering police body-worn camera "only to the extent that it [was] unambiguous and not subject to multiple inferences"). The court has reviewed the videos and finds that the contents are not unambiguous. The videos show various perspectives of the officers' interactions with plaintiff, but none of the videos follows plaintiff thorough the entire relevant timeline; the viewer is required to piece together the separate videos and draw inferences where there are gaps in the timeline. The videos thus do not contain facts which are not subject to reasonable dispute, as required for judicial notice under Rule 201(d) of the Federal Rules of Evidence. To the contrary, the videos support a reasonable dispute about what they establish. Accordingly, judicial notice at the pleading stage is inappropriate. See Khoja, 899 F.3d at 1000; see also Brown v. City of San Diego, No. 3:17-CV-00600-H-WVG, 2017 WL 3993955, at *2, 2017 U.S. Dist. LEXIS 146888 (S.D. Cal. Sept. 11, 2017) (finding that a factual dispute as to what was shown on police body-worn camera video precluded it from being considered on a Rule 12(c) motion).

The request for judicial notice is denied, and the sufficiency of plaintiff's claims will be evaluated exclusively on the face of the complaint. Von Saher, 592 F.3d at 960.

### C. Claim One: § 1983 Fourth Amendment Unlawful Seizure

Plaintiff's first cause of action asserts a violation of the Fourth Amendment's prohibition of unlawful seizures but does not specify the acts of Officer Giri that are alleged to have violated plaintiff's right to be free from unreasonable seizure. ECF No. 1 at 7. Defendant construes Claim One as an illegal arrest claim,[1] and argues that it must be dismissed because "the officers had probable cause to arrest Plaintiff." ECF No. 9 at 6.

The Civil Rights Act relied on by plaintiff, 42 U.S.C. §1983, "confers a tort remedy upon individuals 'whose constitutional rights have been violated by state officials acting 'under color

---

[1] The complaint refers to the arrest as "baseless." ECF No. 1 at 7, ¶ 27. Plaintiff's opposition to the motion addresses the claim exclusively as an unlawful arrest claim, ECF No. 15 at 9-11, confirming defendants' construction.

6

of' law.'" Reynaga Hernandez v. Skinner, 969 F.3d 930, 937 (9th Cir. 2020), quoting Whalen v. McMullen, 907 F.3d 1139, 1145 (9th Cir. 2018). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a person violated a right secured by the Constitution or laws of the United States and (2) that said person acted under the color of state law when they committed the alleged violation." McDonald v. County of Sonoma, 506 F. Supp. 3d 969, 978 (N.D. Cal. 2020).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Lacey v. Maricopa County, 693 F.3d 896, 918 (9th Cir.2012) (internal citations omitted). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." United States v. Patayan Soriano, 361 F.3d 494, 505 (9th Cir.2004). "[T]he determination of probable cause is based upon the totality of the circumstances known to the officers at the time" of the arrest. Id.

The complaint states that plaintiff was placed under arrest but never charged with any crime. Defendants argue that Officer Giri had "probable cause to arrest Mr. Carrizales for violation of California Penal Code § 148(a)." ECF No. 9 at 7. "The elements of the asserted crime at issue here, a Section 148(a)(1) violation, are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." Velazquez v. City of Long Beach, 793 F.3d 1010, 1018 (9th Cir. 2015) (citing Garcia v. Superior Court, 177 Cal.App.4th 803, 818 (2009)).

Plaintiff argues first that probable cause for his arrest is defeated by the fact that Officer Giri himself was engaged in unlawful conduct by vacating the homeless encampment. "For a § 148(a)(1) conviction to be valid, a criminal defendant must have 'resist[ed], delay[ed], or obstruct[ed]' a police officer in the *lawful* exercise of his duties." Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir.2005) (en banc) (alterations in original). "The longstanding rule in California ... is that a defendant cannot be convicted of an offense against a peace officer '*engaged in ... the performance of ...* [his or her] *duties'* unless the officer was acting lawfully at

7

the time the offense against the officer was committed." Id., quoting In re Manuel G., 16 Cal.4th 805, 815 (1997) (alteration in original).

Here, the complaint alleges that at the time of his arrest, he was "protesting the *illegal* eviction/displacement of unhoused campers being conducted by the Vallejo Police Department. ECF No. 1 at 3 (emphasis added). The complaint further states that the Officers were clearing the camp in violation of unspecified "state law and local ordinances." ECF No. 1 at 2-3. In his opposition to the motion to dismiss, plaintiff clarifies that he alleges the officers were violating homelessness encampment protections under Martin v. Boise, 920 F.3d 584 (9th Cir. 2019). ECF No. 15 at 6. In Martin, the Ninth Circuit held that "as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter." Martin v. City of Boise, 920 F.3d 584, 617 (9th Cir. 2019). This holding was abrogated by the Supreme Court in City of Grants Pass, Oregon v. Johnson, 603 U.S. 520 (2024).

The complaint lacks factual allegations that demonstrate the illegality of clearing the encampment. There are no facts establishing that the police sweep was in violation of a specific court order or municipal directive that would demonstrate presumptive illegality. More to the point, there is no allegation here that Officer Giri was the policy maker who decided that the encampment should be cleared. Accordingly, the legality of the homeless sweep itself is not determinative. The relevant question for purpose of the probable cause question is whether Officer Giri's own actions in relation to plaintiff were lawful. Those actions were his order for plaintiff to move from the path of the tow truck, and his removal of plaintiff when plaintiff refused. The allegations of the complaint provide no basis for a conclusion that Officer Giri's specific actions vis-à-vis plaintiff were unlawful.[2]

---

[2] To the extent that plaintiff argues the arrest was unconstitutional because he had a First Amendment right to protest what he believed was illegal police activity, that is the subject of his independent First Amendment retaliation claim. A First Amendment right to protest does not confer a constitutional right to disobey the law, including police orders to disperse or stand aside. A choice not to do so is an act of civil disobedience, not a circumstance that makes an arrest unreasonable per se under the Fourth Amendment. Whether First Amendment rights are being exercised or not, an arrest is lawful if supported by probable cause.

Plaintiff also argues that his conduct did not support probable cause for an arrest under § 148 because he complied with the arrest order and did not engage in violence, threats, or physical obstruction (at least after the initial admitted refusal to move). ECF No. 15 at 6. Plaintiff is correct that both the Ninth Circuit and California law give citizens a degree of latitude in confronting police: California Penal Code §148 "does not criminalize a person's failure to respond with alacrity to police orders." Valezquez, 793 F.3d at 1019. However, plaintiff's own allegations that he physically blocked Officer Giri from completing his task and declined to move after being clearly verbally instructed to do so demonstrate that plaintiff was in fact engaging in obstruction within the meaning of § 148. The facts of the complaint itself therefore support the existence of probable cause to arrest plaintiff. Accordingly, this claim must be dismissed.

D. Claim Two: § 1983 Fourth Amendment Excessive Force

Plaintiff asserts that defendants violated his "firmly established right under the Fourth Amendment to be free from official infliction of physical abuse, assault, battery . . . and to be free from excessive force being used against him." ECF No. 1 at 8. The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007). The motion to dismiss does not address the specific allegations in the complaint related to excessive force, instead simply arguing that plaintiff's allegations are conclusory and that body camera footage shows that "officers used only force as necessary in arresting Mr. Carrizales." ECF No. 9 at 9. Defendants contend that plaintiff "does not allege any facts that any additional force was used to arrest him."

Defendants fail to acknowledge several allegations that are indeed relevant to an excessive force claim: (1) plaintiff was detained in a hot car and his pleas for water and help were ignored[3]; (2) plaintiff was driven by Officer Giri, who was driving erratically, while plaintiff was

---

[3] "Post-arrest detention in a hot, unventilated police vehicle may constitute excessive force under the Fourth Amendment." Greathouse v. City of Fresno, No. 1:24-cv-00715 JLT BAM, 2025 WL 1557945, at *4, 2025 U.S. Dist. LEXIS 104388, (E.D. Cal. June 2, 2025), report and recommendation adopted, No. 1:24-cv-00715 JLT BAM, 2025 WL 1744134 (E.D. Cal. June 24, 2025)).

handcuffed and unbuckled[4]; and (3) plaintiff was subject to painful body searches in which Officer Giri applied unnecessary pressure to the surgical site on plaintiff's chest[5]. Instead of addressing any of these specific grounds for plaintiff's excessive force claim, defendants make a conclusory argument that the use of force was reasonable. ECF No. 9 at 8-10.[6] To the extent this contention is based on the body camera footage, it must be rejected. The court has denied judicial notice of the contents of the videos, and the facial sufficiency of the claims turns entirely on plaintiff's allegations. Because those allegations are sufficient to support an excess force claim, the motion to dismiss is denied as to Claim Two.

E. Claim Three: § 1983 Fourth Amendment Denial of Medical Care

Plaintiff alleges that "[d]espite repeatedly requesting medical treatment and care due to the injuries Plaintiff sustained as a result of the excessive force employed by Defendants, Defendants refused to timely summon medical care for Plaintiff[.]" ECF No. 1 at 8-9. Claims alleging inadequate medical care during and immediately following an arrest are analyzed under the Fourth Amendment. Tatum v. City and County of S.F., 441 F.3d 1090, 1098–99 (9th Cir. 2006). The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care to an arrestee. Id. at 1098–99. When a detainee is injured or suffers a medical crisis during or immediately after arrest, a police officer satisfies his or her constitutional obligations "by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." Id. at 1099.

Defendants argue this claim should be dismissed because "the Complaint does not allege Plaintiff required medical treatment for his chest pain and dry mouth." ECF No. 9 at 10. This is

---

[4] "[I]f the defendants drove recklessly with the plaintiff handcuffed in the back seat so as to cause him further pain and injury, this, by itself, is enough to state a claim upon which a reasonable factfinder could conclude that the officers used excessive force." Kostrzewa v. City of Troy, 247 F.3d 633, 640 (6th Cir. 2001).

[5] Ramirez v. City of San Jose, No. 21-cv-08127-VKD, 2022 WL 875643, at *5, 2022 U.S. Dist. LEXIS 53312 (N.D. Cal. Mar. 24, 2022) (declining to dismiss at the pleading stage where plaintiff claimed, "use of force caused him pain and exacerbated a pre-existing injury.").

[6] Defendants do concede, without conceding the truth of the allegations, that plaintiff states a Fourth Amendment claim that his handcuffs were excessively tight, injuring a stated surgical site. ECF No. 9 at 4, n.1.

not the case; the complaint alleges multiple times that plaintiff asked for and did not receive medical attention. Plaintiff first alleges that he "notified Defendant Giri that he was not feeling well and needed medical and needed medical attention" when Giri first returned to the patrol car in which plaintiff had been sitting. ECF No. 1 at 5. Plaintiff next alleges that "Once they arrived at the police department, Plaintiff made an explicit demand for medical attention. Instead of calling an ambulance or transporting Plaintiff to the emergency room, Defendant Giri told Plaintiff that the Jail nurse would decide if he needed medical attention whenever they got to the jail." Id. The motion mischaracterizes the complaint, which plainly alleges facts to support a Fourth Amendment denial of medical care claim. Accordingly, the motion is denied as to Claim Three.

      F.   Claim Four: § 1983 First Amendment Retaliatory Arrest

Plaintiff alleges that defendant officers violated his right to free speech and his right to protest police action when he was arrested for engaging in protest activity. ECF No. 1 at 10. As a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. Nieves v. Bartlett, 587 U.S. 391, 398 (2019); Hartman v. Moore, 547 U.S. 250, 256 (2006). If an official acts out of an impermissible retaliatory motive and causes injury, and "nonretaliatory grounds are in fact insufficient to provide the adverse consequences" such that the impermissible motive is the "but for" cause of the injury, the injured person may seek relief under the First Amendment. Hartman, 574 U.S. at 256.

Plaintiff's alleged facts do not support the conclusion that retaliation for his speech, or even for the fact of his protest, was the "but for" cause of his arrest. According to his own allegations, plaintiff was arrested for physically obstructing a tow truck being used by officers to clear an encampment, and he was arrested only after disregarding a verbal direction to move. ECF No. 1 at 4-5. Because it is clear from the complaint itself that the cause of the arrest was plaintiff's obstruction, and not hostility to his speech or point of view, this cause of action must be dismissed.

////

G. Defendant Officers are Not Entitled to Qualified Immunity on Remaining Federal Claims

"Qualified immunity shields government officials under § 1983 unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting District of Columbia v. Wesby, 538 U.S. 48, 62-63 (2018)). When performing a qualified immunity analysis, courts have discretion to decide which of these two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). If the analysis under one prong is dispositive, the court need not analyze the other. See id. at 236, 241–43. Under both prongs, plaintiff bears the burden of proof. Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946 (9th Cir. 2017).

Here, for the reasons set forth above, the court has already determined that plaintiff has sufficiently alleged violations of his Fourth Amendment rights to be free from excessive force and to access medical care while detained. Accordingly, the court must determine whether those rights were clearly established. To do this, the court must look to then-existing "cases of controlling authority" or, if there are no such cases, to a "consensus" of persuasive authorities. Evans v. Skolnik, 997 F.3d 1060, 1066 (9th Cir. 2021) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates [it]." Rico, 980 F.3d at 1298 (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015) (*per curiam*)). The Supreme Court instructed courts "not to define clearly established law at a high level of generality." Kisela v. Hughes, 584 U.S. 100, 104 (2018). Nor can the court take the extreme opposite approach, requiring a prior case "on all fours." Rico, 980 F.3d at 1298. Instead, the court must determine whether "the violative nature of [the defendant's] particular conduct is clearly established ... in light of the specific context of the case.'" Id. (quoting Hamby v. Hammond, 821 F.3d 1085, 1091 (9th Cir. 2016)). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law." Id. (quoting Wesby, 538 U.S. at 57).

It is clearly established and was clearly established at the time of the incident underlying this case, that the Fourth Amendment requires law enforcement officers to provide objectively

reasonable post-arrest care to an arrestee. Tatum, 441 F.3d at 1098–99. Any reasonable officer would know that if an arrestee states that they recently had heart surgery, says they are feeling unwell, and demands medical attention, the Fourth Amendment requires the officer to summon medical care. The defendant Officer Giri is not entitled to qualified immunity on the Fourth Amendment failure to provide medical care claim.

It is also clearly established, as defendants acknowledge, that overly tight handcuffs can violate the Fourth Amendment's prohibition against excessive force. ECF No. 9 at 4. Finally, it is clearly established that putting an arrestee in unsafe conditions through confining him to an overly hot car for an extended time, driving recklessly and without buckling them, or intentionally aggravating an existing wound can constitute a Fourth Amendment Claim for excessive force. Greathouse, 2025 WL 1557945 ("Post-arrest detention in a hot, unventilated police vehicle may constitute excessive force under the Fourth Amendment."); Kostrzewa, 247 F.3d at 640 ("[I]f the defendants drove recklessly with the plaintiff handcuffed in the back seat so as to cause him further pain and injury, this, by itself, is enough to state a claim upon which a reasonable factfinder could conclude that the officers used excessive force."); Ramirez, 2022 WL 875643 (declining to dismiss at the pleading stage where plaintiff claimed, "use of force caused him pain and exacerbated a pre-existing injury."). Defendant officers are not entitled to qualified immunity at the pleading stage as to these claims.

H.  Official Capacity Allegations

Plaintiff makes references in his complaint to suing defendant Giri, and other yet to be named officers, in both their "individual and official" capacities. See ECF No. 1 at 1-2. A suit against a state official in their "official capacity" is a suit against the office that the individual holds, and thus against the government entity itself. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Accordingly, as defendants correctly note, an official capacity claim requires plaintiff to establish that the entity defendant was working for had a "policy or custom" that "played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978)). Plaintiff does not address this argument in his opposition, and his complaint includes no Monell

claim or allegations that could support municipal liability. All allegations against Officer Giri involve his individual actions vis-à-vis plaintiff. Accordingly, they are exclusively individual capacity claims. Accordingly, any putative claims against officers in their official capacity are dismissed.

### I. Claim Five: Bane Act

Plaintiff alleges that the defendant officer as well as the City violated the Tom Bane Civil Rights Act, codified at California Civil Code § 52.1. ECF No. 1 at 10. The Bane Act protects individuals from interference with federal or state rights by creating a cause of action for such interference that is carried out "by threats, intimidation or coercion." See Venegas v. County of Los Angeles, 153 Cal.App.4th 1230, 63 Cal.Rptr.3d 741 (2007); Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014). Claims under the Bane Act may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims. Venegas, 63 Cal.Rptr.3d at 753. The Bane Act requires a specific intent to violate the plaintiff's rights. Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). "With respect to municipal liability under the Bane Act, it is clear that a city can be held vicariously liable under the Bane Act [and where the complaint] sufficiently alleges that City officers committed a Bane Act violation, the City is a proper defendant[.]" Est. of Chivrell v. City of Arcata, 694 F. Supp. 3d 1218, 1232 (N.D. Cal. 2023).

Defendants allege that plaintiff has not alleged sufficient facts to support a Bane Act violation, or to show that Officer Giri had a specific intent to violate his rights. ECF No. 9 at 13. The court finds that the facts alleged are sufficient to support a Bane Act claim.

> [T]he Bane Act does not require the "threat, intimidation or coercion" element of the claim to be "transactionally independent" from the constitutional violation alleged. Therefore, Plaintiffs need not allege coercion beyond the coercion inherent in the underlying excessive force allegation.

Est. of Chivrell, 694 F. Supp. 3d at 1229–30. As to specific intent, the court again finds the allegations sufficiently specific. For example, plaintiff alleges that while in the patrol car, he specifically requested medical attention, and Officer Giri "said no." ECF No. 1 at 5. Plaintiff also alleges Officer Giri "violently dug his fingers into the center of Plaintiff's chest, right on his

14

open-heart surgery wound, causing intense pain and protest from plaintiff." Id. at 6. Such allegations could plausibly demonstrate a specific intent to violate plaintiff's Fourth Amendment rights. The motion to dismiss must accordingly be denied as to the Bane Act claim.

### J. Claim Six: Negligence

Plaintiff alleges that the City and the officer defendants are liable for negligence "in their search and seizure of Plaintiff and in their conduct committed against Plaintiff." ECF No. 1 at 11. Defendants assert that the negligence claim must be dismissed because "Plaintiff refers to the same force that he alleges supported his federal claim, however that same force is reasonable under the totality of the circumstances." ECF No. 9 at 13.

To prevail on a claim for negligence, a plaintiff must establish: (1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach. Ladd v. County of San Mateo, 12 Cal.4th 913, 917-918 (1996). Police officers in California have a duty not to use excessive force. Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009). As explained above, plaintiff has stated a claim for excessive use of force. Accordingly, he states a claim for negligence on the same basis. The motion to dismiss must accordingly be denied on this point.

### K. Claim Seven and Eight: Assault and Battery

Defendants seek to dismiss plaintiff's state law claims of assault and battery on the grounds that the force used against plaintiff was reasonable. ECF No. 9 at 13-14. This argument fails because the court has concluded that the complaint alleges force that was unreasonable. Accordingly, plaintiff also states claims for assault and battery. See So v. Shin, 212 Cal. App. 4th 652, 668-69 (2013) (setting out elements for causes of action for assault and battery). The motion to dismiss is denied as to these claims.

### L. Claim Nine: False Imprisonment

Plaintiff alleges that because he was arrested without probable cause, he was falsely imprisoned under California law. ECF No. 15 at 18-19. Under California law, false imprisonment is the "'unlawful violation of the personal liberty of another.'" Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Asgari v. City of Los Angeles, 15

Cal. 4th 744, 757 (1997)). The elements of false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hospital, 80 Cal. App. 4th 484, 496 (2000) (citation omitted). For the reasons explained above in the analysis of plaintiff's unlawful seizure claim, plaintiff does not state a false imprisonment claim because defendant Officer Giri had probable cause to arrest plaintiff. Accordingly, this claim must be dismissed.

### M. Claim Ten: Intentional Infliction of Emotional Distress

Plaintiff alleges defendants' conduct amounted to the intentional infliction of emotional distress. ECF No. 1 at 13. The elements of a prima facie claim for intentional infliction of emotional distress are as follows: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982) (citations omitted). For conduct to be outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.). Defendants' only argument for dismissal of plaintiff's IIED claim is that the complaint "does not meet the high test to plead an IIED claim, nor does it allege Defendants' intent to injure or actual knowledge that severe emotional distress would result." ECF No. 9 at 15. This underdeveloped argument in unconvincing in light of plaintiff's surviving claims, and the motion is denied on this point.

### N. Leave to Amend

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." Rosenberg Bros. & Co. v. Arnold, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

1  pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss and Liehe,
2  Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).
3      The court has concluded that Claims One (unlawful arrest in violation of the Fourth
4  Amendment), Four (retaliatory arrest in violation of the First Amendment) and Nine (false
5  imprisonment) must be dismissed because the allegations of the complaint do not demonstrate an
6  arrest lacking probable cause.  It is theoretically possible that the allegation of other facts could
7  cure these claims.  The court notes for example that Cal. Penal Code § 148, on which defendant
8  relies, "does not criminalize a person's failure to respond with alacrity to police orders."
9  Valezquez, 793 F.3d at 1019.  The complaint does not specify how long plaintiff stood in front of
10 the truck, whether he was asked more than once to move, or how long Officer Giri waited to
11 permit compliance before arresting plaintiff.  See ECF No. 1 at 4, ¶¶ 11,12.  Such facts, if they
12 can be alleged consistently with Rule 11(b)(3), Fed. R. Civ. P., could change the analysis on
13 Counts One and Nine.[7]  Additional facts regarding retaliatory motive, if they are available, might
14 save plaintiff's First Amendment claim.  In any event, the court cannot exclude the possibility of
15 successful amendment.  Accordingly, leave to amend will be granted as to these claims.
16     Leave to amend will not be granted as to the assertion of claims against Officer Giri or
17 Doe defendants in their "official capacities," as such amendment would be futile.  Should plaintiff
18 wish in the future to add official capacity or municipal liability claims under Monell, supra, he
19 must bring the appropriate motion under Rule 15, Fed. R. Civ. P.

### III. Conclusion

21   For the reasons set forth above, defendants' motion to dismiss (ECF No. 9) is GRANTED
22 IN PART AND DENIED IN PART as follows:
23     1. GRANTED as to Claims One (unlawful arrest in violation of the Fourth Amendment),
24        Four (retaliatory arrest in violation of the First Amendment) and Nine (false
25        imprisonment), which are dismissed with leave to amend;

---

[7] As previously explained, this Rule 12(b)(6) motion is being evaluated exclusively on the basis of the complaint itself.  The Ninth Circuit's liberal approach to amendment is clear, and the undersigned will not make decisions regarding the futility of amendment based on a preview of evidence that is not properly before the court at the pleading stage.

2. GRANTED as to all official capacity claims against individual defendants, without leave to amend; and

3. Otherwise DENIED.

4. Within thirty (30) days, plaintiff shall file *either* a First Amended Complaint *or* a notice informing the court that he chooses not to amend. Should plaintiff elect not to file a First Amended Complaint, the case will proceed on plaintiff's claims of Fourth Amendment Excessive Force, Fourth Amendment Denial of Medical Care, Bane Act, Negligence, Assault, Battery, and Intentional Infliction of Emotional Distress.

DATED: September 4, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE